UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **TROY TURONE RAINEY**<br>     **LA. DOC # 212682**<br>**VS.** | **CIVIL ACTION NO. 3:11 -cv- 0502**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **SHERIFF ANDY BROWN, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Pro se plaintiff Troy Turone Rainey, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on March 25, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Jackson Parish Corrections Center (JPCC), Jonesboro, Louisiana, and he complains that he has received inadequate medical care. He also faults the facility's insufficient and ineffective prisoner grievance procedure. Plaintiff sued Jackson Parish Sheriff Andy Brown and Warden Bill Tigner seeking compensatory damages in the amount of $90,000.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

In his original unsigned complaint filed on March 25, 2011, plaintiff alleged that he is diabetic and is not afforded an appropriate diet; that on "most days" his glucose levels are low, especially in the morning and the facility does not supply "glucose pills." He also complained that

he has experienced "severe chest pains"; however, his "many" requests for an electrocardiogram (EKG) have been ignored by Warden Tigner. In general he complained that other facilities are "medically and securely fit to house inmates for extended periods of time" and therefore Warden Tigner and Sheriff Brown are violating plaintiff's constitutional rights "because of the way JPCC's prison is being ran [sic]..." Plaintiff also complained that Dr. Hearn recommended that he see an "eye doctor" on some unspecified date; however, Nurse Whitehead "failed to even put him on the list to see the optometrist."

Plaintiff also complained that JPCC's grievance procedure is inadequate, "so inmates can have proper access to the courts is also a requisite that needs to be addressed..." Plaintiff concluded by complaining "... that the facilities [sic] deliberate indifference to his dire medical needs are more than likely a violation of his constitutional rights..." [Doc. 1]

Plaintiff was ordered to submit a signed complaint [Doc. 4] and on May 10, 2011, he complied, adding additional details and complaints to the pleading. He complained that on February 18, 2011, Dr. Hearns examined him and when he complained of blurred vision she indicated that she would arrange for him to see an "eye doctor"; however, no such appointment was ever made. When he complained of chest pains to Dr. Hearn, she advised him to fill out another medical request form since his original complaint apparently only raised issues related to his vision. Plaintiff also complained that JPCC has no dietician and there are no diet trays for diabetics like plaintiff and no low-sodium trays for persons, such as plaintiff, who suffer from high blood pressure. Plaintiff also complained that since he is diabetic he is supposed to have sugar levels and kidneys checked every 90 days; however, he has been incarcerated at JPCC for over eleven months and, "not once have my sugar level or my kidneys been check [sic]." Plaintiff claimed that he met with Warden Tigner and


requested a medical transfer but the Warden ordered plaintiff to leave his office and denied his request. [Doc. 5]

## *Law and Analysis*

### *1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998). Nevertheless, in order to be afforded the benefits of this assumption a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. . *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); see also *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's original complaint set forth various claims and the basis for his cause of action; he filed an amended complaint which provided additional details and facts in support of his claims for relief. Plaintiff has apparently pleaded his best case. Many of his claims are conclusory; others are contradictory. In any event, further amendment would clearly serve no useful purpose.

## 2. Medical Care

Plaintiff is a convict who complains that he has been denied prompt and appropriate medical care by the two named defendants – Sheriff Andy Brown and Warden Bill Tigner. The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm.. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts

tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings. Indeed, read liberally, it appears that plaintiff is seen daily by the nursing staff and on occasion by a physician. His disagreement with the diagnosis and course of treatment that is provided to him falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Further, assuming the worst case scenario, plaintiff's factual allegations support a claim for negligence if anything. However, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an excessive risk of injury to him, and, that they were both aware of the facts from which the inference

could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id.* at 837. Evidence of unsuccessful medical treatment, negligence, neglect, or even gross medical malpractice is insufficient to establish deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir.2006); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."); *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir.1993) ("It is firmly established that negligent or mistaken medical treatment or judgment does not implicate the eighth amendment and does not provide the basis for a civil rights action.").

In short, "[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Gobert*, 463 F.3d at 346. For that reason, mere disagreement with medical diagnosis and treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *Id.* Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir.1999). Federal constitutional protections are not violated merely because an inmate's medical treatment was unsuccessful or because a condition persisted despite treatment. *Gobert*, 463 F.3d at 346.

Finally, in order to prevail on a claim of delayed or denied medical care, the prisoner-plaintiff must show that the delay resulted in substantial harm to the plaintiff. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

Plaintiff's allegations concerning the deliberate indifference of Sheriff Brown and Warden Tigner are either conclusory or inconsistent or contradictory. In his original complaint he faulted

Warden Tigner for ignoring his requests for an EKG because of "severe chest pains." In his amended complaint, however, he alleged that when he complained of chest pains to Dr. Hearn on February 18, 2011, she simply advised him to submit another medical request form. Plaintiff has not stated whether he followed Dr. Hearn's advice and sought additional diagnostic tests or treatment for his chest pains; however, it must be assumed that he did not since he made no further reference to the chest pains in his subsequent amended complaint, and, he alleged no harm resulting from the failure to provide cardiac testing.

Plaintiff complained in both complaints about the diet at JPCC which is not, according to him, appropriate for diabetics or for persons suffering from high blood pressure. However, this claim is purely conclusory – he did not describe the diet that is provided, nor did he describe the diet he believes would be appropriate for his condition. Finally, and more importantly, plaintiff alleged no harm resulting from the diet he is provided.

In his original complaint plaintiff implied that he is provided "routine glucose level checking" on a daily basis at the JPCC nursing station, and he alleged that his glucose levels are low "most days." However, in his amended complaint he alleged that his glucose or sugar levels have never been checked during the period he has been incarcerated at JPCC. In any event, with regard to his diabetic condition or his high-blood pressure, plaintiff has not alleged any serious harm resulting from the care or lack of care he has received at JPCC.[1]

---

[1] It should be noted that plaintiff filed a medical care complaint against corrections officials at the Orleans Parish Prison (OPP) where he was incarcerated from September 13, 2009 until May 2010 when he was transferred to JPCC. In that complaint he alleged that he did not receive adequate medical care for arthritis or diabetes while at the OPP. With regard to his diabetic condition, plaintiff testified in a *Spears* hearing conducted by the United States Magistrate Judge that he needs to check his blood sugar levels and take insulin daily. He claimed that on 10 occasions between September 2009 – May 2010 he did not receive insulin or "diabetic

Finally, plaintiff complained that when he complained to Dr. Hearn about blurred vision, she agreed to refer him to an optometrist; however, either she or Nurse Whitehead failed to follow through with that promise. Plaintiff did not allege whether he thereafter requested a follow up, and, in any case, he did not allege (nor can the undersign imagine) that the delay in providing optometric care resulted in substantial injury.

In short, plaintiff has failed to allege facts sufficient to establish deliberate indifference on the part of Sheriff Brown or Warden Tigner; his medical care complaint fails to state a claim for which relief may be granted.

### 3. *Grievances*

Plaintiff also implies that he is entitled to relief based upon his claim that JPCC's grievance procedure is inadequate. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate

---

snacks" and, when he failed to obtain his medication, he lacked the energy to get out of bed and became weak. In the Report recommending dismissal of plaintiff's complaint, the Magistrate Judge concluded, "Rainey's testimony about his ... diabetic condition did not identify any serious risk of harm or any actual serious harm resulting from the alleged denial of treatment sufficient to rise to the level of serious medical needs for purposes of constitutional analysis. At most, he suffered aches and pains endemic to arthritis and weakness from the 10 days during which he was without his insulin." *See Troy Rainey v. Marlin Gusman, et al.*, No. 2:11-cv-0558, United States District Court for the Eastern District of Louisiana at Doc. 21.

Clearly, the deprivation of insulin for any period of time would be a far more egregious circumstance than are the circumstances alleged herein. Further, the undersigned cannot imagine that the harm suffered by plaintiff based upon the diet provided at JPCC would be far less than the harm suffered after having been deprived of medication. Plaintiff has never alleged that he was deprived of any necessary medication while incarcerated at JPCC.

constitutional *minima*. *See Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir.2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (*see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 ( per curiam ) (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Plaintiff's complaint concerning the inadequacies of the JPCC's grievance procedures fail to state a claim for which relief may be granted.

*Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, June 10, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE